UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DANA FAULKNER, a/k/a "Diablo,"<br><br>Defendant. | CR. 17-50144-JLV<br><br>ORDER |

## INTRODUCTION

A grand jury indicted defendant Dana Faulkner on September 12, 2017, charging him with conspiracy to distribute a controlled substance, use of a firearm in furtherance of a drug trafficking crime, and possessing a firearm as a prohibited person. (Docket 20). Defendant moved to suppress all statements made and evidence collected during his arrest on August 28, 2017. (Docket 38). The suppression motion was referred to Magistrate Judge Daneta Wollmann for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's April 1, 2018, standing order. The magistrate judge conducted a hearing on the motion and issued a report and recommendation ("R&R") concluding defendant's motion should be denied. (Dockets 64 & 77). Defendant timely filed objections to the R&R. (Docket 78). The government did not object to the R&R but did respond to defendant's objections. (Docket 81).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and

recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

For the reasons stated below, the court overrules defendant's objections in part and sustains them in part. The court accordingly modifies and adopts the magistrate judge's recommendations.

## DEFENDANT'S OBJECTIONS

Defendant objects to nine of the magistrate judge's conclusions. (Docket 78 at pp. 1-2). In his briefing, however, defendant condensed these nine objections into five argument sections, which the court will separately address. These contentions are:

1. Law enforcement's sources of information were insufficiently corroborated to justify the Terry[1] stop. Id. at pp. 19-23.

2. The degree of communication between Investigator Casey Kenrick and Officers Raetz and Senesac was insufficient to justify the Terry stop and subsequent arrest of defendant. Id. at pp. 2-16.

3. Defendant's statements were obtained in violation of Miranda[2] and Shatzer.[3] Id. at pp. 16-17.

---

[1]Terry v. Ohio, 392 U.S. 1 (1968).

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

[3]Maryland v. Shatzer, 559 U.S. 98 (2010).

4.     Defendant's arrest violated the Fourth Amendment. <u>Id.</u> at pp. 17-18.

5.     The inventory search of defendant's vehicle was invalid. <u>Id.</u> at pp. 18-19.

As an initial matter, the court notes defendant objects to the magistrate judge's conclusion the firearm seizure and serial number inspection did not violate the Fourth Amendment but does not argue this objection in his briefing. (Docket 78 at pp. 1, 16-17). "[O]bjections must be timely and specific to trigger de novo review[.]" <u>Thompson v. Nix</u>, 897 F.2d 356, 357-58 (8th Cir. 1990). This objection, although timely, is general and conclusory, without any development. After undertaking a *de novo* review, the court finds the magistrate judge's analysis on this issue is accurate and well-reasoned. (Docket 77 at pp. 19-21). Defendant's objection is overruled and the court adopts the R&R on this point.

Defendant does not object to the magistrate judge's findings of fact. The court adopts the comprehensive factual background section of the R&R. <u>Id.</u> at pp. 2-12. As necessary to inform its analysis, the court will refer to the R&R's factual findings, as well as to testimony and exhibits from the May 1, 2018, evidentiary hearing.

## ANALYSIS

## I.   Whether the <u>Terry</u> Stop was Proper

Pennington County Sheriff's Investigator Casey Kenrick ("Inv. Kenrick") is a member of the Unified Narcotics Enforcement Team ("UNET"), which

investigates drug offenses.  <u>Id.</u> at p. 2.  Throughout the summer of 2017, Inv.

Kenrick received information from seven confidential sources of information

("SOIs") regarding defendant's alleged drug distribution activities in the Rapid

City area.  <u>Id.</u> at pp. 2-3.  On August 28, 2017, two SOIs informed Inv. Kenrick

defendant was in Rapid City.  <u>Id.</u> at p. 8.  Inv. Kenrick contacted a supervisor at

the Rapid City Police Department ("RCPD") for assistance in stopping defendant's

vehicle.  (Docket 67 at pp. 39-40).  Officers Raetz and Senesac were assigned to

assist Inv. Kenrick.  <u>Id.</u> at pp. 40, 106.  They subsequently stopped defendant's

vehicle and arrested him.  (Docket 77 at p. 10).  The officers did not observe

defendant make any traffic violations before they pulled his vehicle over.

(Docket 67 at p. 148).

The magistrate judge concluded the information Inv. Kenrick received from

his SOIs was sufficiently corroborated to provide the necessary reasonable

suspicion for a <u>Terry</u> stop.  <u>Id.</u> at p. 15.  The magistrate judge further found Inv.

Kenrick communicated with Officers Raetz and Senesac to a degree sufficient to

imbue them with the necessary collective knowledge to conduct a proper <u>Terry</u>

stop.  <u>Id.</u> at p. 16.  Defendant objects to both conclusions.  (Docket 78 at

pp. 19-23; 2-16).

### A. Whether the SOI information was sufficiently corroborated to provide the necessary reasonable suspicion for a <u>Terry</u> stop

"The Fourth Amendment permits an investigative stop of a vehicle if

officers have a reasonable suspicion the vehicle or its occupants are involved in

criminal activity." United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007). "An officer's suspicion is reasonable if he 'knows particularized, objective facts that lead to a rational inference that a crime is being or has been committed.'" United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008) (quoting United States v. Hernandez-Hernandez, 327 F.3d 703, 706 (8th Cir. 2003)). "Reasonable suspicion may be based on an informant's tip where the tip is both reliable and corroborated." Bell, 480 F.3d at 863. "Reasonable suspicion can arise from an informant's tip 'that is less reliable than that required to show probable cause.'" United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

### 1. Whether information obtained from incarcerated SOIs is per se less reliable

Inv. Kenrick relied upon seven SOIs in his investigation of defendant prior to the arrest. Defendant notes six of these SOIs were in custody at the time of their interviews with Inv. Kenrick. (Docket 78 at p. 19). He argues information obtained from SOIs in custody should be considered "per se less reliable" because "people who are in custody inherently talk to one another about their cases and the intimate aspects of those cases." Id. Defendant does not allege any of the SOIs lied to Inv. Kenrick or otherwise colluded with other SOIs while in custody to provide false information. In fact, Inv. Kenrick—a witness the magistrate judge found credible—testified none of the SOIs were aware he was speaking with the others. Docket 77 at p. 2; docket 67 at p. 23. Defendant also does not cite any authority for the proposition that information provided by

incarcerated SOIs is per se less reliable. The court declines to find the Terry stop invalid because it was based on information provided by incarcerated SOIs.

## 2. Whether the SOIs' information was "reliable and corroborated"

The magistrate judge found "the SOIs corroborated each other on many key points[.]" (Docket 77 at p. 15). Defendant objects to this finding and argues the SOIs were not reliable. The court, like the magistrate judge, rejects defendant's "argument that the various SOIs' statements were insufficiently corroborated [or] that SOI #2's tip was unreliable and insufficiently predictive." Id.

The SOIs corroborated one another on several issues, including a physical description of defendant. SOIs 1, 2, 3 and 6 all told Inv. Kenrick they obtained drugs, primarily methamphetamine, from a man they knew as "Diablo." Id. at pp. 3-7; docket 67 at p. 22. Each of these SOIs, as well as SOI #5, gave a physical description of Diablo as a white man with a large beard and brown hair, similar in appearance to Inv. Kenrick. (Docket 77 at pp. 3-8).

Additionally, many of the SOIs corroborated information given by other SOIs. For example, SOI #4 informed Inv. Kenrick SOIs 1, 2, 3 and 6 sold drugs for Diablo. Id. at p. 7. In another example, SOIs 4 and 6 independently informed Inv. Kenrick defendant stayed with Jade Dugan and Braden Storms[4] at a residence in Rapid City. Id. at p. 7. Each provided the same address for this

---

[4]Jade Dugan and Braden Storms each pleaded guilty to federal drug conspiracy charges arising from this investigation. See United States v. Dugan, 5:17-CR-50174-01 (Docket 64) (D.S.D. Mar. 22, 2018); United States v. Storms, 5:17-CR-50174-03 (Docket 74) (D.S.D. May 4, 2018).

residence, which corroborated information Inv. Kenrick received from other sources.   Id.   SOIs 1 and 2 each independently informed Inv. Kenrick about an incident in rural Meade County where SOI #2 took SOI #1 to meet Diablo regarding a drug debt.   Id. at pp. 3-4.   Multiple SOIs informed Inv. Kenrick Diablo was armed and dangerous.   SOIs 2 and 6 both observed Diablo with firearms, while SOI #1 considered Diablo a threat to his life.   Id. at pp. 3-4, 7. SOI #2 also believed Diablo wanted to kill him.   Id. at p. 8.

On August 28, 2017, SOIs 2 and 5 notified Inv. Kenrick that Diablo was in Rapid City to collect a drug debt SOI #2 owed.   Id. at p. 8.   SOI #2 informed Inv. Kenrick he observed defendant driving a white BMW with Colorado plates.   Id. at p. 9.   Inv. Kenrick then observed a man matching the SOIs' description driving a white BMW with Colorado plates, corroborating the SOIs' information. Id.   It was at that point Inv. Kenrick directed Officers Raetz and Senesac to stop defendant's vehicle.   Id. at pp. 9-10.   Following defendant's arrest, SOIs 2 and 3 positively identified the defendant as Diablo from a photograph Inv. Kenrick took of defendant.   Id. at p. 12.

This factual recitation amply demonstrates sufficient reasonable suspicion to justify the Terry stop.   The information provided by the SOIs regarding defendant's drug dealing activities was independently corroborated by the other SOIs and law enforcement.   SOI #2—who gave Inv. Kenrick the information most proximately leading to defendant's arrest—was corroborated in his physical description of defendant, his recounting of taking SOI #1 to defendant to account

for a drug debt, his observations of defendant carrying firearms and his information regarding defendant's presence in Rapid City on the day of the arrest and the vehicle he was driving. The court finds the SOI tips leading to the <u>Terry</u> stop of defendant were both "reliable and corroborated." <u>Bell</u>, 480 F.3d at 863. The court overrules defendant's objection and adopts the R&R on this issue.

### B. Whether Inv. Kenrick communicated sufficient information to the arresting officers to permit them to conduct a proper <u>Terry</u> stop

"In deciding whether to conduct a <u>Terry</u> stop, an officer may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." <u>United States v. Thomas</u>, 249 F.3d 725, 728 (8th Cir. 2001). "When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." <u>United States v. Frasher</u>, 632 F.3d 450, 453 (8th Cir. 2011). The "some degree of communication" standard guides the court's analysis of defendant's objection.

The magistrate judge concluded "some degree of communication" occurred between Inv. Kenrick and arresting officers Raetz and Senesac, justifying the <u>Terry</u> stop. (Docket 77 at p. 16). Defendant objects to this conclusion, arguing the communication between the officers was insufficient. (Docket 78 at p. 16). Defendant alleges Inv. Kenrick improperly instructed the arresting officers to place certain information in their arrest reports, implying he only informed them

of the true reasons for the stop after the arrest.   Id. at pp. 6-7.   Defendant points to Officer Raetz's refusal to tell defendant the reason for the stop and his statement to Officer Doyle, another RCPD officer who arrived on scene to assist with the arrest, that UNET instructed him to make the stop as evidence that he did not actually have any knowledge of the drug investigation of defendant.   Id. at pp. 7-9, 11-14.   Finally, defendant highlights the arresting officers' confusion regarding the time Inv. Kenrick contacted Officer Raetz with instructions to stop defendant, suggesting the officers may also have been confused regarding the contents of that communication.   Id. at pp. 15-16.

These arguments are unavailing because the communication between investigating and arresting officers need not be as extensive as defendant argues to justify a Terry stop.   Defendant, pointing to his testimony at the evidentiary hearing, argues Officer Raetz "had not been told anything other than to stop the white BMW and that there was probable cause to do so."   Id. at p. 14.   Even taking this assertion as true—which the court does not—the United States Court of Appeals for the Eighth Circuit's caselaw considers orders by an investigating officer to the arresting officer with no accompanying information sufficient communication to justify a Terry stop.   In United States v. Jacobsen, the Eighth Circuit validated a vehicle stop and a 10 to 15 minute investigative detention where the officer "was given no information about the investigation, except that narcotics detectives needed help stopping the truck."   391 F.3d 904, 905-06 (8th Cir. 2004).   Similarly, in United States v. Robinson, the Eighth Circuit

validated a stop where the investigating officer called the patrol dispatcher to have a specific vehicle stopped.   664 F.3d 701, 703-04 (8th Cir. 2011).   The arresting officer in Robinson did not testify at the suppression hearing and seemingly only communicated with the investigating officer through the patrol dispatch.   Id.   Even if Officers Raetz and Senesac were merely ordered by Inv. Kenrick to pull over defendant's vehicle, with no additional information, caselaw dictates such an order is sufficient communication to justify a Terry stop.

The facts in this case are not so narrow, however.   The magistrate judge found the arresting officers either attended UNET briefings regarding the investigation of defendant or discussed the investigation with other law enforcement officers.   (Docket 77 at p. 16).   Officer Senesac testified at the suppression hearing he attended a UNET briefing discussing Diablo where he received information about the drug investigation and a physical description of defendant.   (Docket 67 at p. 107).   Officer Raetz did not recall attending a UNET briefing, but testified he was aware of the investigation of defendant via information received from other officers.   Id. at p. 141.   In addition to the information the arresting officers knew before the arrest date, Inv. Kenrick testified that shortly before the stop he told Officer Raetz "we had a subject . . . believed to be armed, potentially trafficking methamphetamine, known to be violent, or have at least threats of violence."   Id. at p. 41.   Inv. Kenrick also gave Officer Raetz a description of defendant's vehicle.   Id. at p. 67.   This

information exceeds the minimal amount of communication required by the Eighth Circuit in <u>Jacobsen</u> and <u>Robinson</u>.

Defendant points to three Eighth Circuit cases and one case from this court in an attempt to establish a higher level of communication between investigating and arresting officers is required to justify a <u>Terry</u> stop. In defendant's first case, <u>United States v. Rowe</u>, the Eighth Circuit upheld a vehicle stop where the arresting officer received a bulletin describing the vehicle as involved in narcotics trafficking and a phone call from the investigating officers asking the arresting officer to pull the vehicle over. 878 F.3d 623, 628-29 (8th Cir. 2017). The facts of this case are analogous. Officers Raetz and Senesac were aware of the UNET investigation of defendant through briefings and communication with other law enforcement officers and were asked by Inv. Kenrick to pull defendant over. <u>Rowe</u> does not establish a higher standard for communication between investigating and arresting officers that cannot be met in this case.

Defendant cites <u>United States v. Morales</u> as an example of sufficient communication to justify a <u>Terry</u> stop. 238 F.3d 952 (8th Cir. 2001). There, "the arresting officer was intimately involved with the investigation" and participated in surveillance of the defendant. <u>Id.</u> at 954. The arresting officers here were not intimately involved with the investigation of defendant, but <u>Morales</u> does not purport to create a new standard for sufficient communication. In fact, the <u>Morales</u> court cited the "some degree of communication" standard

that guides the court in evaluating the stop at issue here.   Id.   Defendant's
reliance on Morales is unavailing.

Defendant turns to United States v. Williams as another example of the
communication necessary to validate a Terry stop.   429 F.3d 767 (8th Cir.
2005).   However, the stop in Williams was based on a traffic violation and the
Eighth Circuit held the stop could also be justified by imputing the collective
knowledge of investigating narcotics officers to the arresting local police officer.
Id. at 771-72.   The Williams court also cited to the "some degree of
communication" standard.   Id. at 772.   The facts of this case, which lacked a
traffic violation, are distinguishable.   Additionally, Williams did not establish a
higher standard for sufficient communication.   Williams does not dissuade the
court from concluding the Terry stop here was justified by sufficient
communication.

Finally, defendant relies on United States v. McClelland, a decision of the
Southern Division of this court.   CR 17-40029, 2017 WL 5158682 (D.S.D. Nov.
6, 2017).   In McClelland, a Mitchell, South Dakota officer pulled the defendant
over after receiving information from the South Dakota Highway Patrol (which
had in turn received it from Utah law enforcement) that a vehicle matching
defendant's was "possibly transporting illegal contraband."   Id. at *1.   The
arresting officer also observed defendant speeding.   Id.   The court stated,
"[l]acking specific, articulable facts from the law enforcement officers who had
communicated with him, [the arresting officer] would not have had reasonable

suspicion to conduct a stop to investigate a crime without the traffic violation."
Id. at *4 (emphasis added). Defendant contends this statement creates a higher
standard than the Eighth Circuit's "some degree of communication" rule by
requiring an arresting officer to have "specific, articulable facts" from the
investigating officer to justify a Terry stop. (Docket 78 at pp. 2-3).

The magistrate judge distinguished McClelland by stating the court held
the information provided by the Utah investigating officer was insufficient to
justify the arresting officer using a drug dog to sniff defendant's vehicle, not that
it was insufficient to justify the stop itself. (Docket 77 at p. 16 n.1). The court
disagrees with this analysis; the court in McClelland clearly referred to the
vehicle stop, not the drug dog sniff. McClelland, 2017 WL 5158682 at *4 ("In
fact, when asked by the Court if he would have been able to *stop the vehicle* had
Defendant not been speeding, [the arresting officer] said he could not.")
(emphasis added). However, the court agrees McClelland is distinguishable.
The stop there was justified by a traffic violation and the court spoke of the
additional "specific, articulable facts" it believed the arresting officer would have
needed to receive from the Utah investigating officer only in the alternative.
This dictum is not binding in the present case and does not displace the Eighth
Circuit's "some degree of communication" standard. Even if it did, Officers
Raetz and Senesac were aware of specific, articulable facts regarding the
defendant at the time of the stop, including his involvement in drug trafficking

and the potential he was carrying firearms.    The court finds defendant's reliance on McClelland unpersuasive.

The court agrees with the magistrate judge's finding that Officers Raetz and Senesac were aware of the investigation of defendant and his association with drug trafficking and firearms through UNET briefings and other communication between law enforcement officers.    (Docket 77 at p. 16).    This level of communication is sufficient to satisfy the Eighth Circuit's requirement that arresting officers have some degree of communication with investigating officers to justify a Terry stop.    The court overrules defendant's objections and adopts the R&R on this issue, with the modification discussed above regarding its analysis of McClelland.

## II.    Whether Defendant's Statements to Police were Obtained in Violation of **Miranda** and **Shatzer**

Having established the Terry stop of defendant was supported by reliable and corroborated reasonable suspicion that was properly conveyed to the arresting officers, the court turns to defendant's contention the statements he made to police at the stop which led to his arrest were obtained in violation of Miranda and Shatzer.    The magistrate judge concluded defendant was not in custody when he made the incriminating statement and was therefore not interrogated in violation of Miranda.    Id. at p. 19.    Defendant argues he was "under arrest and . . . his freedom was curtailed in a significant way" when he made the incriminating statement.    (Docket 78 at p. 16).    On defendant's Shatzer argument, the magistrate judge found defendant's request for an

14

attorney did not trigger <u>Miranda</u> and so the statements he made after requesting

an attorney did not violate <u>Miranda</u>.    (Docket 77 at pp. 19-20).    Defendant

asserts he was questioned "in direct violation of [his] invocation of counsel[.]"

(Docket 78 at p. 17).

### A.  Whether defendant's statements were obtained in violation of <u>Miranda</u>

In <u>Miranda v. Arizona</u>, the Supreme Court held criminal suspects in

custody "or otherwise deprived of . . . freedom" must be notified of certain rights

before interrogation may begin.    384 U.S. 436, 478-79 (1966).    "[P]ersons

temporarily detained" in a <u>Terry</u> stop "are not 'in custody' for purposes of

<u>Miranda</u>."    <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440 (1984).    However, the

circumstances of a <u>Terry</u> stop may become custodial enough to warrant <u>Miranda</u>

warnings.    <u>Id.</u>

> A <u>Terry</u> stop that is supported by reasonable suspicion at the outset
> may nonetheless violate the Fourth Amendment if it is excessively
> intrusive in its scope or manner of execution. Accordingly, the
> Supreme Court in <u>Terry</u> created a dual inquiry whereby we examine
> (1) whether the investigatory stop is lawful at the outset, and
> (2) whether the manner in which the stop was conducted was
> reasonably related in scope to the circumstances which justified the
> interference in the first place.

<u>El-Ghazzawy v. Berthiaume</u>, 636 F.3d 452, 457 (8th Cir. 2011) (internal

quotations omitted).    The <u>Terry</u> stop here was "lawful at the outset."    <u>See</u> <u>supra</u>

Section I.    The court must now consider whether the conduct of the stop was

justified in proportion to defendant's alleged criminal activity.

15

After pulling defendant's vehicle over, Officer Raetz instructed defendant to step out of his vehicle.   (Docket 77 at p. 10).   Upon doing so, defendant gestured to his waistband and indicated he was carrying a concealed weapon. Id.  The weapon was not outwardly visible and the officers did not immediately know defendant was carrying a firearm.   (Docket 67 at p. 148).   After defendant indicated he was carrying a weapon, Officer Raetz instructed defendant to move away from the vehicle and get down on the ground.   (Docket 77 at p. 10). Officer Senesac then handcuffed defendant and removed the firearm from the defendant's waistband while he was on the ground.   Id.; docket 67 at p. 112. Officer Senesac did not administer Miranda warnings to defendant.

Officer Raetz then helped defendant stand up and walked with him back to Officer Raetz's police vehicle.   (Docket 77 at p. 10).   During the walk, defendant requested an attorney.   Id.   Officer Raetz responded, "I'll be sure not to ask you anything."   Id.   Officer Raetz did not administer Miranda warnings to defendant.

Officer Raetz did a pat-down search of defendant as they were walking to the police vehicle.[5]   (Docket 67 at p. 150).   He removed a "wad of cash and cards" from defendant's person.   Id.   Officer Raetz then asked defendant for permission to search through the recovered items.   Id. at p. 151.   Defendant consented.   Id.   As Officer Raetz was searching through the bundle of defendant's property, he asked defendant if the bundle contained his concealed

---

[5]Defendant does not challenge the propriety of this frisk.

carry permit.  Id. at p. 155.  Defendant responded that it did not.  Id.  Officer Raetz then asked defendant if he had a concealed carry permit and defendant responded he did not.  Id. at p. 156.  Carrying a concealed weapon without a permit is a misdemeanor under South Dakota law.  SDCL § 22-14-9(1).

While Officer Raetz was speaking to defendant, Officer Senesac read the serial number of the firearm he took from defendant's waistband to the police dispatch officer to determine if the weapon was stolen.  Id. at p. 114-15.  The serial number was clearly visible on the outside surface of the weapon and Officer Senesac did not have to manipulate the weapon to see the serial number. Id.  Dispatch reported the weapon had been reported stolen from Rapid City. Id. at p. 116.  Possession of a stolen firearm is a felony under South Dakota and federal law.  SDCL § 22-30A-17; 18 U.S.C. § 922(j).

Defendant acknowledges Officer Raetz's discovery defendant did not have a concealed carry permit was probable cause for an arrest.  (Docket 78 at p. 18). Defendant instead contends he was in custody at the time he made the statement.  Id. at p. 16.  Eighth Circuit caselaw forecloses this argument.

The Eighth Circuit held a Terry stop did not morph into custody when police officers "drew their guns and ordered the driver and [defendant] to exit the truck with their hands in the air" and subsequently "handcuff[ed] the two men and plac[ed] them in separate squad cars."  United States v. Navarrete-Barron, 192 F.3d 786, 789, 791 (8th Cir. 1999).  In Navarette-Barron, officers previously found drugs and ammunition in an earlier arrest where the arrestee

17

incriminated defendant.  Id. at 789.  The Eighth Circuit held the officers'

actions were justified by "the dangerous nature of the suspected crime of drug

trafficking and the good possibility that the driver or [defendant] had a weapon[.]"

Id. at p. 791.

The Eighth Circuit likewise declined to hold officers exceeded the bounds

of a Terry stop when they forcibly removed a motorist suspected of drug

trafficking from his vehicle.  United States v. Newell, 596 F.3d 876, 880 (8th Cir.

2010).  The Eighth Circuit held officers at a Terry stop of suspected drug

traffickers are permitted to act as though the suspect is armed, even in the

absence of specific information the suspect actually is armed.  Id.  The officers

were therefore justified in removing defendant from the vehicle by force for their

safety.  Id.  As officers were removing defendant from the vehicle, they observed

a bag of cocaine hanging from his pocket.  Id.  The visible cocaine provided

probable cause for the defendant's arrest.  Id.

This caselaw makes clear Officers Raetz and Senesac were permitted to

order defendant out of the vehicle at gunpoint,[6] order him to get on the ground,

and handcuff him without transforming the Terry stop into an arrest requiring

Miranda warnings.  The officers here had reliable, corroborated information that

defendant was dangerous and may have been carrying firearms.  This

---

[6]Defendant contends the arresting officers drew their guns at the car stop
and pointed them at him.  (Docket 78 at p. 8).  The magistrate judge did not
make a finding on this point, but Officer Raetz's dashcam video briefly shows
Officer Senesac pointing his weapon at defendant and then holstering his
weapon as he approaches defendant.  Suppression Hearing Ex. 1. at 16:00.

information entitled the officers to order defendant out of the vehicle immediately after pulling him over for their own safety.   As he stepped out of the vehicle, defendant indicated he had a concealed firearm in his waistband, which entitled the officers to handcuff him, again for their safety.   This case resembles the situation in <u>Navarrete-Barron</u>.   Following the Eighth Circuit's approach, the court rejects defendant's "claim that the stop was an arrest without probable cause" because "the officers did not use unreasonable force" "in light of the dangerous nature of the suspected crime of drug trafficking" and the defendant's possession of a weapon.   <u>Navarette-Barron</u>, 192 F.3d at 791.

Because the defendant was not under arrest or otherwise in custody when he told Officer Raetz he did not have a concealed carry permit, the court finds his interrogation was not in violation of <u>Miranda</u>.   The court overrules defendant's objection and adopts the R&R on this issue.

### B.  Whether defendant's statements were obtained in violation of <u>Shatzer</u>

Defendant also argues he was interrogated in violation of <u>Maryland v. Shatzer</u>, 559 U.S. 98 (2010).   (Docket 78 at p. 17).   The magistrate judge concluded defendant's request for an attorney did not, by itself, trigger <u>Miranda</u>'s requirements because defendant was not in custody at the time of the request. (Docket 77 at pp. 19-20).

The Supreme Court in <u>Shatzer</u> modified the rule that a suspect subject to custodial interrogation may not be questioned by police once he requests counsel as established by <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981).   In <u>Shatzer</u>, the

Court held a break in custody lasting longer than 14 days permits law enforcement to administer Miranda warnings again and question the suspect if he waives his Miranda rights.   Shatzer, 559 U.S. at 110-11.   Shatzer, which governs cases where the suspect experiences a break in custody, is clearly inapplicable to defendant's situation.   Defendant was not in custody when he was questioned and he did not experience a break in custody.

While superficially similar to defendant's case, Edwards is likewise inapposite.   Edwards only applies when a suspect is subject to custodial interrogation and requests an attorney.   451 U.S. at 484-85.   Although defendant did request an attorney, the court concluded he was not in custody when he made that request.   See supra Section II.A.   The Edwards rule did not prevent officers from questioning defendant after he requested an attorney.   The court overrules defendant's objection and adopts the R&R on this issue.

## III.   Whether Defendant's Arrest Violated the Fourth Amendment

The magistrate judge concluded defendant's arrest, though warrantless, was supported by probable cause.   (Docket 77 at pp. 22-23).   Defendant objects, pointing to a discrepancy between the time of arrest entered in the RCPD dispatch log and the time the dash camera video shows defendant admitting to not having a concealed carry permit.   (Docket 78 at pp. 17-18).   The dispatch log lists defendant's time of arrest as 16:02:44, while defendant admitted to not having a concealed carry permit at 16:04:04.   Id.   Although the exact time dispatch informed Officer Senesac defendant's firearm was stolen is not clear,

Officer Senesac testified he received the information while he was still at the arrest site. (Docket 67 at p. 116). His dash camera shows him leaving the site at approximately 16:18:20. Suppression Hearing Ex. 2. Defendant argues an arrest occurring at 16:02:44 would have been without probable cause and a violation of the Fourth Amendment. (Docket 78 at p. 17).

"Although there is no bright line of demarcation between investigative stops and arrests a *de facto* arrest occurs when the officers' conduct is more intrusive than necessary for an investigative stop." United States v. Bloomfield, 40 F.3d 910, 916-17 (8th Cir. 1994) (internal citations omitted). "An investigative detention may turn into an arrest if it lasts for an unreasonably long time or if officers use unreasonable force." United States v. Donnelly, 475 F.3d 946, 953 (8th Cir. 2007) (internal quotations omitted). "The courts have also held that transporting a suspect to another location or isolating him from others can create an arrest. Additional factors that may weigh in favor of an arrest are subjecting a suspect to unnecessary delays, handcuffing him, or confining him in a police car." Bloomfield, 40 F.3d at 917.

The court finds defendant was not under arrest before the arresting officers discovered he was carrying a weapon without a concealed carry permit. The court already concluded the measures officers took to restrain defendant after the car stop were justified by the officers' safety and did not exceed the boundaries of a Terry stop. See supra Section II.A. The fact officers handcuffed and confined defendant before he confessed to not having a

concealed carry permit does not signify he was under arrest because they reliably suspected him of being a dangerous drug trafficker in possession of weapons and were entitled to restrain defendant for their safety without effecting an arrest.

The gap between the time defendant alleges his arrest occurred, at 16:02:44, and the time officers discovered probable cause for an arrest, 16:04:04, was extremely short, lasting less than two minutes. The court finds defendant was lawfully detained for investigatory purposes during that time. When defendant confessed to having no concealed carry permit, the officers had probable cause to arrest him for violating South Dakota law. The court need not determine at what exact moment his investigative detention became an arrest because it is clear the arrest occurred after the officers uncovered probable cause. The court overrules defendant's objection and adopts the R&R on this issue.

## IV. Whether the Inventory Search of Defendant's Vehicle was Valid

The magistrate judge concluded law enforcement officers validly conducted a search of defendant's vehicle without a warrant under the inventory exception. (Docket 77 at pp. 23-25). Defendant objects to this conclusion, arguing there is no evidence law enforcement "complied with any standardized protocols" during the search. (Docket 78 at pp. 18-19). As explained below, the court sustains this objection because the government presented virtually no evidence of any standardized inventory search protocols that would have applied

to the search of defendant's vehicle.    However, the court instead finds the search was valid under the automobile exception to the warrant requirement.

### A.    Whether the search was justified under the inventory search exception

Once the arresting officers secured defendant, Inv. Kenrick arrived on scene with other UNET agents, as well as a Department of Homeland Security special agent.    Docket 77 at p. 11; docket 67 at p. 54.    Inv. Kenrick testified defendant refused to answer questions about who owned the vehicle.    (Docket 67 at pp. 59-60).    Inv. Kenrick and the other agents searched defendant's vehicle and located "two glass pipes, a black ledger notebook, pills, several grams of methamphetamine, a vape pen with methamphetamine oil, a small amount of Colombian pesos, and a car title" in another individual's name.    (Docket 77 at p. 12).    The record does not disclose where in the vehicle each item was found. Dash camera footage shows agents searching the passenger component of the vehicle, the trunk, under the floor of the trunk, under the hood, and along the lid of the trunk.    Suppression Hearing Ex. 1 at 16:13-15:45; Ex. 2 at 16:15:15.

Inv. Kenrick, Officer Senesac and Officer Raetz were all questioned about the search during the suppression hearing.    Inv. Kenrick believed he had independent probable cause to search the vehicle.    (Docket 67 at p. 54).    Officer Senesac's only testimony on the subject was to reply "Yes" to the government's question whether "it was decided that there would be an inventory search of the vehicle[.]"    Id. at p. 115.

Officer Raetz provided the government's only testimony regarding inventory search procedures. He replied "Yes, ma'am" to the government's question whether defendant's vehicle had to "either be towed or released to someone" after defendant was in police custody. Id. at p. 162. Officer Raetz testified:

> [After defendant was secured,] we would have conducted an inventory to insure that all property left in the vehicle was going to stay in the vehicle and that it was all accounted for to dissuade any tow truck company from possibly attempting to steal any property that was rightfully in the vehicle.

Id. at 161. He then agreed with the government his statement was "standard procedure if a vehicle is being towed[.]" Id. The government did not offer any additional evidence on this subject.

"[I]t is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978). "When the government seeks to introduce evidence that was seized during a warrantless search, it bears the burden of showing the need for an exemption from the warrant requirement and that its conduct fell within the bounds of the exception." United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993). Inventory searches are one such exemption from the warrant requirement. United States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005). "The central question in evaluating the propriety of an inventory search is whether, in the

totality of the circumstances, the search was reasonable.  Inventory searches

conducted according to standardized police procedures, which vitiate concerns

of an investigatory motive or excessive discretion, are reasonable."  Id. (internal

citation omitted).

Officer Raetz testified only it was standard procedure to search a vehicle

that will be towed to safeguard property in the vehicle.  While this is certainly a

legitimate reason for an inventory search, it is so general as to leave the court no

basis to determine whether the search was reasonable.  There was no evidence

regarding the details of RCPD's inventory search policy or its limitations.  For

example, agents searched not only the trunk and passenger components of the

vehicle, but also under the vehicle's hood.  The government offered no evidence

as to whether a search of the engine compartment was generally proper under

RCPD policy or whether it was proper in these specific circumstances.[7]  Under

these circumstances, the court cannot determine whether the agents were acting

in accordance with RCPD policy in the conduct of this search.

The court does not doubt RCPD has a comprehensive inventory search

policy and it may well be this search would be completely valid under that policy.

Because the government provided virtually no evidence of RCPD's inventory

search policy, the court is simply unable to determine if the search of defendant's

---

[7]Had the government introduced evidence showing RCPD policy permits
agents to conduct an inventory search of a vehicle's engine component, the court
would have considered the search reasonable.  See United States v. Ball, 804
F.3d 1238 (8th Cir. 2015) (upholding inventory search of an engine compartment
authorized by police policy).

vehicle complied with that policy.   See Florida v. Wells, 495 U.S. 1, 4-5 (1990) (invalidating an inventory search when the law enforcement agency "had no policy whatever" regarding searching closed containers found in a vehicle); Marshall, 986 F.2d at 1175 (invalidating an inventory search when the government "failed to present any evidence that demonstrates the existence of standardized inventory procedures").   Accordingly, the court sustains defendant's objection.

### B.     Whether the search was justified under the automobile exception

"The automobile exception to the Fourth Amendment allows police officers to conduct a warrantless search of a vehicle if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime."   United States v. Brown, 550 F.3d 724, 727 (8th Cir. 2008) (internal quotations omitted).   "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place."   United States v. Vore, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting Kennedy, 427 F.3d at 1141).

Here, probable cause existed to search defendant's vehicle.   The agents who searched the vehicle, including Inv. Kenrick, were engaged in an extensive investigation of defendant's drug trafficking activities supported by multiple reliable and corroborated informants.   Through these informants, Inv. Kenrick and other UNET agents suspected defendant of trafficking large quantities of

drugs from Colorado into the Rapid City area while armed. At the stop prior to the search, the officers found defendant was in fact carrying a stolen firearm. Under these circumstances, there was more than a fair probability agents would find evidence of drug trafficking or firearms offenses in defendant's vehicle.

The court finds the warrantless search of defendant's vehicle was justified by the automobile exception. The R&R relied on its finding the search was valid under the inventory search exception and did not consider whether the automobile exception applied. (Docket 77 at pp. 24-25). For the reasons given above, the court modifies the R&R by holding the search of defendant's vehicle was not a proper inventory search but was instead justified by the automobile exception.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's objections to the magistrate judge's report and recommendation (Docket 78) are overruled in part and sustained in part.

IT IS FURTHER ORDERED that the report and recommendation (Docket 77) is adopted as modified by this order.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 38) is denied.

IT IS FURTHER ORDERED that a scheduling order will follow.

Dated December 3, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE